**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

VINCENT A. CHINGMAN,

      Petitioner,                           CASE NO.   05-CV-10127-BC
                                                          01-CR-20010-BC

v.

                                            DISTRICT JUDGE DAVID M. LAWSON

UNITED STATES OF AMERICA,            MAGISTRATE JUDGE CHARLES BINDER

      Respondent.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Dkt. 55)

**I.**    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that

1) the motion be **GRANTED IN PART,** a hearing held to determine the personal use

quantity of the total cocaine seized and the Petitioner resentenced as required, and

2) in all other respects, the motion be **DENIED**.

**II.**    **REPORT**

    **A.**    **Introduction**

Pending, pursuant to an Order of Reference from United States District Judge David

Lawson (Dkt. 62), is the above-entitled motion filed under 28 U.S.C. § 2255 to vacate Petitioner's

federal custodial sentence. (Dkt. 60.) Pursuant to an order extending the time to file a response

(Dkt. 76), the Respondent filed a response on July 31, 2006. (Dkt. 77.) As the time provided for

a reply under this Court's Local Rules has now passed, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is now ready for Report and Recommendation without oral argument.

## B.   Procedural History

Petitioner directly appealed his sentence (Dkt.29), and his appeal was dismissed by the Sixth Circuit on February 4, 2004. (Dkt. 51.)  On May 4, 2005, the instant motion to vacate sentence under § 2255 was filed. (Dkt. 55.)

The substantive facts were reported in the Sixth Circuit opinion as follows:

In April of 2001, Defendant was indicted by a federal grand jury on three counts: (1) possession with intent to distribute 500 grams or more of cocaine; (2) possession with intent to distribute a quantity of marijuana; and (3) possession of firearms, in and affecting commerce, by a person having been convicted of one or more crimes punishable for a term exceeding one year.  On January 25, 2002, the district court entered judgment, convicting Defendant of the first count of the indictment, to which Defendant pleaded guilty, and dismissing the other two counts, on the government's motion.  Defendant was sentenced to 262 months (i.e., more than twenty-one-and-a-half years) in prison.  Defendant filed a timely notice of appeal.

The Presentence Investigation Report sets forth the basic facts.  'On January 16, 2001, agents from the local Alcohol, Tobacco, and Firearms (ATF) office received a call from Dick Williams' gun shop in Saginaw, Michigan.  Agents were advised that VINCENT A. CHINGMAN had dropped off a firearm for repair/replacement of a buttstock.  The gun shop questioned the legality of the weapon.'  The employees at the gun shop questioned the legality of the weapon.  The employees at the gun shop identified Petitioner in a computer-generated line-up.   The weapon that Petitioner dropped off was determined to be a machine gun (a MAK90, 7.62 x 39 mm rifle).  'Due to the fact that MR. CHINGMAN is prohibited from possessing a firearm based upon his prior felony record, and that the weapon involved was a machine gun, the weapon was seized and authorities obtained a search warrant for MR. CHINGMAN's home.'

In the home in Saginaw, Michigan, where Petitioner, his girlfriend and their four children resided, police found a shotgun with shells, as well as other ammunition.  In his home, police also found drugs.  There were six bags containing marijuana in quantities of 325.5 grams, 334.4 grams, 441.6 grams, 442.3 grams, 440.9 grams, and 447.1 grams, as well as a small amount of marijuana that was found along with a handheld scale.  There were also, in separate locations within the house, quantities of cocaine of 27.5 grams and 498.4 grams.  As stated in the Presentence Investigation Report:

> In total, 2,160.4 grams of marijuana, and 537.2 grams of cocaine were found in MR. CHINGMAN's home. This would convert to 109.6 kilograms of marijuana.
>
> In a signed confession given to agents shortly after the execution of the search warrant, MR. CHINGMAN stated that he purchased five guns for $300.00 during the summer of 2000. He sold three shotguns and kept the MAK90 and the shotgun which were found in his home. He stated that the 18 ounces of cocaine found in his home belonged to him as did the four to five pounds of marijuana. MR. CHINGMAN stated that he used the scales that were found in the home to measure quantities of cocaine and marijuana. He stated that he sold the cocaine in ounces and the marijuana in pounds.
>
> During the presentence interview MR. CHINGMAN admitted he was dealing marijuana, cocaine, and guns. His intent was to sell the drugs that were found in his home.

*United States v. Chingman*, No. 02-1193 (2/4/2004 E.D. Mich.)(internal citations omitted). The Sixth Circuit noted that "none of the petitioner's criticisms of the trial counsel relate to the actual plea; rather, all of petitioner's criticisms regard sentencing. Thus, the conviction is not in question - the only relief requested would be re-sentencing." *Id.* The Sixth Circuit held that re-sentencing was not warranted because Petitioner had not satisfied the two prongs required under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

At the time of the plea, Petitioner indicated that he was satisfied with the representation provided him by Attorney Robert Currie. (Plea Tr., Dkt. 48 at 6.) He also indicated he was pleading guilty in reliance on the Rule 11 plea agreement. (*Id.* at 7.) Under the plea agreement, Petitioner pleaded guilty to Count I (Possession with intent to distribute 500 grams or more of cocaine following a conviction for a prior drug felony offense), Counts II and III were dismissed, the government recommended a three level reduction for acceptance of responsibility, the parties stipulated that Petitioner was responsible for between 500 grams to two kilograms of cocaine which would place the base offense level at 26, and Petitioner was to be sentenced to no more than

the midpoint of the applicable guideline range. (*Id.* at 8.) An estimate of the appropriate sentencing guidelines range was attached to the Rule 11 plea agreement (*id.* at 9), and the government stated that Petitioner reserved the right to challenge "all – other than the drug amount, provisions of the government's estimate, including the possibility that the [Petitioner] is a career offender under the sentencing guidelines." (*Id.*) Petitioner's counsel indicated he would be challenging the government's consideration of Petitioner as a career offender. (*Id.* at 10.) Petitioner was asked if he understood the elements of the crime, i.e., that: he knowingly possessed cocaine; the amount he possessed was 500 grams or more; and "at the time [he] possessed the cocaine [he] intended to distribute at lease [sic] a portion of it." (*Id.* at 21.) When asked whether Petitioner was "going to use it all or [whether he was] going to distribute some," Petitioner stated, "[t]he intention was to sell it, sir." (*Id.* at 23.) Petitioner added that he "didn't have the people to sell it to" so he planned on returning it to Mr. Hernandez but that Mr. Hernandez had not yet picked the cocaine up at the time the search was conducted. (*Id.* at 22-23.) Petitioner did not mention anything about his own personal use at the time of the plea taking.

During the sentencing hearing, the Court inquired whether Petitioner's counsel's objection regarding the firearm was really more of a challenge to the search warrant. Counsel responded that it was and that the search warrant would not be challenged, so he withdrew his objection. (Sentencing Tr., Dkt. 49 at 5-6.) The Court also addressed Petitioner's objection to being considered a career offender and rejected counsel's argument based on Sixth Circuit precedent. (*Id.* at 15-17.) The Court also addressed and rejected Petitioner's objection, via counsel, that the Eighth Amendment would be violated by sentencing him within the guideline range. (*Id.* at 29-31). The applicable guideline range was 262 to 294 months. Petitioner was sentenced to 262 months.

4

## C.    Analysis and Conclusions

### 1.    Governing Law

#### a.  28 U.S.C. § 2255

In order to prevail on a § 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A § 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation. *See Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994). However, the Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).

#### b.    Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland, supra*. In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Id.* It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that but for counsel's errors, the result would have been favorably

different.  *Id.* at 693.  Failure to make the required showing under either prong of the *Strickland* test defeats the claim.  *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).  This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.  In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).  In a guilty plea context, while the performance prong of the *Strickland* test remains the same, to establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The same analysis applies to an *Alford*-type guilty plea because such a plea is nothing more than a guilty plea entered by a defendant who either maintains he is innocent, or without maintaining his innocence, is unwilling or unable to admit that he committed acts constituting the crime.  *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

### 3.  Petitioner's Claims of Ineffective Assistance

### A.  Search Warrant

Petitioner contended, at oral argument, that the search warrant was invalid because it was based on erroneous information.  Petitioner notes that the gun shop's description of the gun as a fully automatic machine gun was in error because the gun was a semi-automatic gun.  I suggest this error is insignificant because even if the gun was not an unlawful fully automatic gun, as a convicted felon, Petitioner was prohibited from possessing any type of gun.  Even assuming, *arguendo*, the search warrant serving as the basis for this claim was defective, I suggest that the result would be the same because the officer relied, in good faith, on the warrant.  *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005).[1]

The focus of the inquiry under the good faith exception to the warrant requirement is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922, n. 23. Thus, the Supreme Court has held that the good faith exception applies when an officer reasonably relies on a judge's assurances that he would make necessary clerical changes in a warrant, *see Massachusetts v. Sheppard,* 468 U.S. 981, 990, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984); when an officer conducts a search in reasonable reliance on the constitutionality of a statute subsequently declared unconstitutional, *see United States v. Krull,* 480 U.S. 340, 349, 107 S. Ct. 1160, 94 L. Ed. 2d (1987); and when an officer reasonably relies on information regarding an outstanding arrest warrant later found to be

---

[1]The good faith exception was set forth in *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).  It allows an otherwise deficient warrant to survive Fourth Amendment scrutiny except where: 1) the affidavit contains information that the affiant knows or should have known to be false, 2) the issuing magistrate wholly abandoned his or her judicial role, 3) the affidavit is so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable or where the warrant application was supported by nothing more than a "bare bones" affidavit, or 4) the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998).

a clerical error of court employees. *See Arizona v. Evans,* 514 U.S. 1, 14, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995).

In the instant case, the officers were not unreasonable in relying on the gun shop owner's description of the gun as a fully automatic machine gun. *Evans, supra; Wolf v. Winlock*, 34 Fed. Appx. 457, 461-463, 2002 WL 726486 (6th Cir. 2002)(finding no Fourth Amendment violation where officers failed to verify that the Louisville police department had identified the correct "John Wolf(e)" before swearing out a warrant for his arrest because police officers are generally permitted to rely on information transmitted to them in determining whether probable cause exists).

In his supplemental brief, Petitioner contends that there is insufficient nexus between the evidence and the Petitioner's home which was the subject of the search warrant.  (Pet'r's Post Hrg. Mem., Dkt. 74 at 3.)  "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'  There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(internal citations omitted)(finding insufficient nexus between evidence of marijuana growing in a field 900 feet away from defendant's residence and the residence itself but affirming conviction via application of the good faith exception).

The Sixth Circuit's interpretation of this nexus requirement has varied. *See United States v. Newton*, 389 F.3d 631, 640-42 (6th Cir. 2004)(Moore, concurring), *rev'd and remanded on other grounds*, 126 S. Ct. 280 (2005)(remanded for reconsideration of *Booker* sentencing issue).  The question raised in the cases cited internally above has been whether probable cause to search can be inferred from the type of crime suspected and the nature of the evidence. *E.g., United States v.* Jones, 159 F.3d 969, 975 (6th Cir. 1998)(finding that "in the case of drug dealers, evidence is likely to be found where the dealers live"); *United States v. Caicedo*, 85 F.3d 1184, 1192-93 (6th

Cir. 1996)(probable cause finding based on officer's experience that "many drug traffickers utilize their homes to conduct their illegal narcotics trafficking activities").[2]

Inferences giving rise to probable cause have been primarily, if not exclusively, permitted in narcotics trafficking cases. *Newton, supra* (Moore, concurring)("I believe this comes dangerously close to creating a special rule for drug-related search warrants. . .")[3]; *cf., United States v. Savoca*, 739 F.2d 220, 224-25 (6th Cir. 1984)(holding that probable cause to arrest suspected bank robber coupled with inference that bank robbers often conceal fruits and instrumentalities of robberies in private places such as their homes was insufficient to provide probable cause to search suspect's residence), and *United States v. Schultz*, 14 F.3d 1093 (6th Cir. 1994)("[w]hile an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity.").[4]

Research has not revealed a case that addresses the precise nexus question raised on the instant facts: whether probable cause to arrest a suspect for either possession of an unlawful firearm or being a felon in possession of an otherwise lawful firearm may support probable cause to infer that other weapons will be found at the suspect's residence. Here, the affiant indicated that the unlawful gun (or otherwise lawful gun possessed by Petitioner who was a convicted felon) remained at Dick Williams' Gun Shop and was not returned to Petitioner. (Dkt. 74, Ex. 1, ¶ 6.)

---

[2]*See also United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) for a discussion of the development of the law of the various circuits regarding nexus, the nature of the item to be seized and the inferences regarding where such evidence is likely to be kept.

[3]*See also United States v. Whitner*, 219 F.3d 289, 297-98 (3rd Cir. 2000), for a string citation of cases holding that evidence of involvement in drug trafficking is likely to be found at the dealer's residence.

[4]Recent cases have applied the same inference to receiving and possession of child pornography. *E.g., United States v. Wagers*, 452 F.3d 534 (6th Cir. 2006).

9

The affiant then inferred that "based on [his] training and experience, [he is] aware that individuals who are in possession of firearms normally have more than one firearm and normally keep them for extended periods of time." (*Id.* at ¶ 7). Arguably, there are two inferences present: 1) a person who possesses a firearm likely possesses other firearms, and 2) a person who possesses firearms likely keeps them at his residence.[5] Petitioner has focused on the second inference.[6]

Petitioner relies on *Van Shutters, supra*; however, *Van Shutters* is distinguishable. In *Van Shutters*, the search warrant described the premises in detail and particularly described the items to be seized, but defendant argued that the warrant and supporting affidavit failed to describe how the premises were connected to the defendant. In other words, neither the warrant nor the affidavit in support of the warrant stated that the defendant lived at or otherwise occupied the subject residence. The court noted that even though an officer testified[7] that he personally verified that defendant lived at the subject residence, such "information should have been included in the affidavit." *Van Shutters*, 163 F.3d at 337, n. 4. In the instant case, the affiant confirmed that the address to be searched was the address Petitioner listed as his residence and that he was familiar with that address. (Dkt. 74, ¶¶ 2, 8.) Consequently, the issue present in *Van Shutters, supra*, is not

---

[5]Respondent cites *United States v. Smith*, 182 F.3d 473, 480 (6th Cir. 1999), as analogous to the instant facts. (Resp. to Pet'r's Post Hrg. Mem., Dkt. 77 at 5-6.) In *Smith*, the affidavit in support of the search warrant provided that a reliable informant had seen defendant with "two specific weapons...at a specific address within the 48 hours before the search warrant was issued." No inference was needed in *Smith*, there was direct evidence that the weapons were kept in the residence. Since defendant Smith was a convicted felon, this direct evidence easily supported probable cause to believe that defendant Smith was a felon in possession of a firearm contrary to 18 U.S.C. § 922(g). Consequently, *Smith* lends little assistance to the instant inquiry.

[6]I suggest that the inference that if a person possesses firearms that person would likely keep them at home is a logical inference. The more suspect inference, I believe, is that a person who possesses a firearm likely possesses other firearms.

[7]This testimony occurred at the suppression hearing.

10

present here.  The residence was Petitioner's residence and the affidavit contained the requisite information to support that conclusion.

Even if the same issue were present, *Van Shutters* would not lead to a finding that the Fourth Amendment has been violated.  Although the court found that the warrant lacked probable cause because the nexus between the criminal activity and the defendant's home was lacking, the court nonetheless found the good faith exception to the warrant requirement applied and thus, that the search was constitutionally valid. *Id.* at 337-38.  As indicated below, I suggest that the good faith exception also controls the nexus issue. .

Petitioner also relies on *Schultz, supra*.  In *Schultz*, the court held that "[w]hile an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity." *Id.* at 1097.  The court noted that the officer simply relied on his experience that records of drug distributions are often kept in safe deposit boxes, and the court found that such guesswork could not, by itself, establish probable cause. *Id.* at 1097-98.  The court emphasized that "[t]o find otherwise would be to invite general warrants authorizing searches of *any* property owned, rented, or otherwise used by a criminal suspect – just the type of broad warrant the Fourth Amendment was designed to foreclose." *Id.* at 1098 (emphasis in original).  In the instant case, it may be contended that the inferential leap to the effect that because Petitioner possessed a firearm that was held at a gun repair shop, he also possessed other firearms that he likely kept at his residence is similarly insufficient to support probable cause. *United States v. Bennett*, 285 F. Supp. 2d 978, 982-83 (E. D. Mich. 2003), *rev'd on other grounds*, 2004 U.S. App. LEXIS 20640 (6th Cir. 9/30/2004)(finding that an attempted purchase of a gun from a retail store was insufficient to provide probable cause to believe defendant possessed weapons in his home but applying good

11

faith exception to uphold warrant.)   However, I suggest that resolution of that question is unnecessary because the warrant is valid under the good faith exception.

The court in *Schultz* also applied the good faith exception to deny the defendant's motion to suppress the fruits of the search.  The court stated that "although we have held that his 'training and experience' were not sufficient to establish a nexus of probable cause between the crime and the safe deposit boxes, the connection was not so remote as to trip on the 'so lacking' hurdle."  *Id.* The "'so lacking in indicia' test is less demanding than the 'substantial basis' test.  Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good-faith' reliance." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)     Similarly, in the instant case, I suggest that the warrant was not "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Carpenter*, 360 F.3d at 595 (quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002)); *Bennett, supra*.  Correspondingly, I also suggest that Petitioner has not shown that his conviction was "unfair," "suspect," nor that he was prejudiced by any error counsel made in failing to pursue a Fourth Amendment claim that would have been fruitless after application of the good faith exception. *Kimmelman, supra; Hill, supra*.

### B.  Career Offender Status

Petitioner's prior controlled substance convictions include Conspiracy to Possess with Intent to Distribute Cocaine (90-CR 20093-DT-04)(E. Dist. Mich.), Possession with Intent to Deliver Marijuana (96-012715-FH-2)(10th Circuit Court, Saginaw), and Possession of Less than 25 grams Cocaine (98-016549-FH-4)(10th Circuit Court, Saginaw).  Petitioner objected to the Presentence Report's consideration of the 1990 conspiracy conviction with respect to career offender status because conspiracy is an inchoate offense.  Petitioner relies on *United States v.*

*Price*, 990 F.2d 1367 (D. C. Cir. 1993).  In *Price*, the defendant was categorized as a career offender based on two qualifying felonies, one of which was a conspiracy offense.  The court held that 28 U.S.C. § 994(h) did not provide a lawful basis for inclusion of conspiracy convictions when determining career offender status. *Price*, 990 F.2d at 1370 (vacating sentence and remanding for resentencing).  Unfortunately for Petitioner, *Price, supra,* has not been followed by the Sixth Circuit, *United States v. Williams*, 53 F.3d 769 (6th Cir. 1995), and the holding of *Price* has since been superseded by statute, *United States v. Gaviria*, 116 F.3d 1498 (D. C. Cir. 1997).[8]  Therefore, the holding in *Price, supra*, is not relevant.

In addition, in the instant case, even if the conspiracy conviction is removed from consideration, Petitioner would nonetheless qualify as a career offender.

A person is considered a career offender if:

(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence  or a controlled substance offense.

U.S.S.G. § 4B1.1(a)

Petitioner was convicted of two controlled substance offenses in addition to the conspiracy conviction: Possession with Intent to Deliver Marijuana (96-012715-FH-2)(10th Circuit Court, Saginaw) and Possession of Less than 25 grams Cocaine (98-016549-FH-4)(10th Circuit Court, Saginaw).  The instant offense is a controlled substance offense; thus, application of the career offender provision is appropriate.

---

[8]*See also United States v. Powell*, 161 F.3d 738 (D. C. Cir. 1998).

13

## C.  Voluntariness of Plea

To the extent that Petitioner implies that his plea was less than voluntary because he hoped the career offender status would be removed before he was sentenced,[9] I suggest that  any such claim must also fail.  A plea of guilty is valid if it is entered knowingly, voluntarily and intelligently, as determined under the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of his plea. *Id.* at 755; *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 512 U.S. 1222, 114 S. Ct. 2712, 129 L. Ed. 2d 838 (1994). The transcript of the plea taking proceeding shows that Petitioner fully understood the direct consequences of the plea, including the career offender possibility, and that he voluntarily admitted his guilt, consistent with his earlier confession.  (Dkt. 48 at 9-11.)  In addition, Petitioner cannot establish prejudice, i.e., he cannot "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill, supra*, at 59.

Petitioner admitted that he pled guilty knowing that his counsel's argument against Petitioner being considered a career offender may or may not be successful. (Evid. Hrg. 4/11/2006 Tr. at 28.)[10]  Where the court has followed the required plea taking procedure, a criminal defendant is bound by statements made in response during that procedure. *Baker v. United States*, 781 F. 2d

---

[9]Petitioner testified that his counsel "said he was going to get the career criminal off me.  He was going to argue it at sentencing and he was going to get it off me, so you know, sign – we're not going to go to trial, we're going to sign – we're going to argue it at sentencing, and he would get the career criminal off me.  We'll get less time." (Evid. Hrg. 4/11/2006 Tr. at 22.)  However, Petitioner also admitted that he understood that it was possible that his counsel would lose that argument and that he would be considered a career offender and he pleaded guilty with that knowledge. (*Id*. at 22-23, 28.)

[10]Petitioner's counsel also stated that Petitioner pled guilty knowing he may have been found to be a career offender and that Petitioner did not want a trial because the Rule 11 agreement guaranteed a lighter sentence than was otherwise possible. (Evid. Hrg. 4/11/2006 Tr. at 34.)

85 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S. Ct. 667, 93 L. Ed. 2d 719 (1986); *Ramos v. Rogers*, 170 F. 3d 560, 564-65 (6th Cir. ), *cert. denied*, 528 U.S. 847 (1999). Therefore, Petitioner cannot now deny the understanding he expressly acknowledged during the plea colloquy.

Further, the District Court's sentence comports with the plea agreement and is the most lenient sentence within that range.[11]

With respect to the career offender status, counsel's performance did not significantly effect the sentence; thus, Petitioner cannot show he was prejudiced in any manner, let alone in such a way as to cause him to plead guilty where he otherwise would not have done so. *Hill, supra*.

### D. Personal Use Amounts of Cocaine

Petitioner also claims his defense counsel was ineffective because he failed to ask the Court to remove the amount of cocaine Petitioner reserved for his own personal use from the quantity attributed to the charge of possession with intent to distribute. Petitioner did not raise this claim on direct appeal nor did Petitioner object to the scoring of the sentencing guidelines based on this issue.

Petitioner pleaded guilty to possession with intent to distribute 500 grams or more of cocaine. The amount of cocaine found at his residence when the search warrant was executed was 537.2 grams. Although Petitioner did not refer to personal use at the time of the plea taking or sentencing, Petitioner now contends that he was using significant amounts of cocaine himself at the time the search warrant was executed. He estimates that personal use amount to be one and

---

[11]Since Petitioner's sentencing predated *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005), there is no contention that the District Court failed to recognize the advisory nature of the guidelines. Cf., *United States v. McDermott*, No. 05-5509, 2006 WL 1279063, No. 05-5509 (6th Cir. 2006)(vacating sentence where judge believed he was constrained by the guidelines and did not recognize their advisory nature when sentencing a defendant after *Booker* had been decided).

one-half ounces. (Evid. Hrg. 4/11/2006 Tr. at 23.)  This would equate to 42.525g.[12]  The Sixth

Circuit has held that personal use quantities should be segregated from any amount intended for

distribution:

> We hold, therefore, that simple possession of illegal drugs for personal use is not
> conduct that is "relevant" to the charge of possession with intent to distribute a
> controlled substance for the purpose of determining a sentence range under the
> Sentencing Guidelines. Amounts possessed for personal consumption should not be
> included when calculating the amount of drugs to enter into the drug quantity table
> in U.S.S.G. § 2D1.1(c).

*United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003).[13]

Respondent argues that *Gill* does not apply to the instant case because the instant case

involves a sentence imposed under the mandatory minimum sentencing provisions found in 21

U.S.C. § 841(b)(1)(B) for a violation of 21 U.S.C. § 841(a)(1) rather than under the sentencing

guidelines, citing *United States v. Rodriguez-Sanchez*, 23 F. 3d 1488, 1495 (9th Cir. 1994), in

support of that position.  Since the mandatory minimum sentence of 10 years or 120 months is

below that of any applicable guideline range, I suggest that the instant sentence does fall under the

purview of the guidelines.  However, even if Respondent is correct, the result is the same.

The court in *Rodriguez-Sanchez* did state that "[a]lthough the specific holding in *Kipp*[14]

[which analyzed application of the sentencing guidelines] is not technically binding upon us[;]"the

court goes on to conclude that "the principle behind that decision guides our decision." *Rodriguez-*

*Sanchez*, 23 F. 3d at 1496.  The court further "h[eld] that possession of drugs with the intent to

---

[12]One ounce equals 28.35g.

[13]This result would be different if the alleged crime is conspiracy, in which case, the full amount may
be considered. *See United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000), as distinguished in *Gill, supra*.

[14]*United States v. Kipp*, 10 F.3d 1463 (9th Cir. 1993).

distribute them, in violation of § 841(a)(1) involves - under §841(b)(1)(A) - only those drugs which are intended for distribution." *Id.* (remanding for a factual determination of the amount intended for distribution as opposed to personal use).  Consequently, *Rodriguez-Sanchez* actually supports application of *Gill* to the instant case.

In addition, the opinion in *Gill* militates in favor of application to the instant facts because the Court cites to *Rodriguez-Sanchez* with favor and specifically summarizes *Rodriguez-Sanchez* as "noting that '§ 841(a)(1) does not criminalize mere possession of drugs, only possession with intent to distribute...Other statutes deal with the crime of possession. *See* 21 U.S.C. § 844.'" *Gill*, 348 F. 3d at 154.

Other circuits have agreed that courts are required to parse the personal use quantity out of the total quantity possessed.

> The *Fraser* dissent notes a problem with which district courts will have to deal when applying the requirement to exclude drugs possessed for personal use in distribution cases: '[t]o require district courts to parse out personal use quantities whenever such an allegation is made (and I am sure it will often now be made) will needlessly burden them with yet another finely tuned quantity decision to make under the Sentencing Guidelines system.' 243 F.3d at 477. The relevant cases illustrate this problem. In *Kipp* the defendant admitted to possessing 80 to 90 grams of cocaine but argued that he possessed all but five or six grams for his own personal use. In *Fraser* the defendant was arrested when she attempted to purchase 456.6 grams of methamphetamine. At the sentencing hearing she testified that she intended to consume the majority of the drugs; the rest she intended to distribute to family and friends. The government produced evidence that the defendant had sold methamphetamine in the past.  In *Williams* the defendant, a chronic drug user, claimed that a major part of the 68.9 grams seized upon his arrest was for personal use. In Gill the defendant contended that of the 35.4375 grams of cocaine in his possession only 6.8 grams was possessed with intent to distribute. Each case was remanded so that the district court could determine the amount of drugs possessed for personal use and for re-sentencing based upon only the drugs possessed for distribution.

*Jansen v. United States*, 369 F.3d 237, 249 (3rd Cir. 2004)(following the Sixth, Second, Seventh, Eighth and Ninth Circuits).

Since Petitioner did not object to the failure to parse personal use quantity out of the total quantity of cocaine, Petitioner must not only show a "fundamental defect which necessarily results in a complete miscarriage of justice" but also must show good cause and prejudice resulting from the error. *Gill, supra; Reed, supra.* Ineffective assistance of counsel may provide the cause portion. *Crowe*, *supra*.

Respondent argues that because there was no clear Sixth Circuit precedent for the principle that personal use quantity should be separated from quantities intended for distribution at the time of Petitioner's sentencing, that other circuits were not in accord on this issue at the time, and that counsel cannot be considered deficient for failure to argue the same.

However, there is support for the notion that counsel can be considered ineffective for failure to raise the personal use issue even where there is no clear, uniform precedent on this particular subject. *Jansen, supra* (finding counsel ineffective where Seventh and Ninth Circuits had held personal use quantity should be excluded from amounts intended for distribution where counsel practicing in the Third Circuit failed to raise issue).

In the instant case, Petitioner was sentenced on January 25, 2002. At that time, several circuits had issued opinions holding that personal use quantities should be parsed from amounts intended for distribution. *United States v. Wyss*, 147 F. 3d 631 (7th Cir. 1998); *Kipp, supra* (9th Cir.); *United States v. Williams*, 247 F.3d 353, 355 (2d Cir. 2001); *United States v. Fraser*, 243 F. 3d 473, 475 (8th Cir. 2001). The only opinion to the contrary was *United States v. Antonietti*, 86 F.3d 206, 210 (11th Cir. 1996)(allowing personal use quantities to be included in calculation of

the base offense level).[15]  Therefore, I suggest that counsel's failure to raise the issue may provide

the cause that is required to raise this issue under § 2255. *Crowe, supra*.

I further suggest that prejudice is potentially presented on the instant facts.  If Petitioner's

claim that one and one-half ounces or 42.53 grams of cocaine were for personal use only is true,

then the remaining quantity intended for sale would be 494.67 grams.[16]  Using the 494.67 grams,

the sentencing guideline range would change from 262- 327 months to 188-235 months.[17]  I

suggest that this potential error should not be considered harmless. *See United States v. Charles*,

138 F.3d 257, 268 (6th Cir.1998)(error harmless where applicable guideline range unaffected).

I also suggest that this difference is significant enough to have prejudiced Petitioner if the

assertion is true. *Gill, supra; Reed, supra.* Petitioner has not claimed that but for this error he

would have proceeded to trial; thus, he has not satisfied the standard enunciated in *Hill, supra;*

*Nagi v. United States*, 90 F.3d 130, 135-36 (6th Cir. 1996), *cert. denied,* 519 U.S. 1132

(1997)(finding no cause and prejudice shown where counsel failed to object to use of the 1988

guidelines where application of the appropriate 1987 guidelines would have resulted in a lower

sentence but where a plea of guilty to all charged counts would have resulted in a sentence that

would have been greater by 13 years).  However, I suggest that this case exemplifies the

"fundamental unfairness" or "miscarriage of justice" exception discussed in *Grant v. United States*,

72 F. 3d 503, 506 (6th Cir. 1996), *citing, Reed v. Farley*, 512 U.S. 339, 114 S. Ct. 2291, 129 L. Ed

---

[15]In addition, the *Rodriguez-Sanchez* case holding that the same personal use analysis applies to mandatory minimum cases as it does to sentences imposed under the guidelines had been decided in 1994, long before Petitioner's sentencing in 2002.

[16]537.2 total grams less 42.53 personal use grams.

[17]The offense level, without adjustment, drops from 26 to 24.  With adjustment (career offender and acceptance of responsibility), the offense level drops from 34 to 31.

2d 277 (1994). Where a procedurally defaulted claim asserts fundamental unfairness, it is akin to a claim that due process has been violated. *Grant*, 72 F. 3d at 506. Under these circumstances, "collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guidelines calculations." *Id.*

Although Respondent raises a significant question regarding the veracity of this claim,[18] I suggest that Petitioner should be provided with the opportunity to prove or fail to prove that the asserted personal use quantity is accurate.[19] Accordingly, I recommend that a hearing be held to determine whether Petitioner's personal use claim can be supported by the evidence[20] and if so, that his sentence be corrected to reflect the actual amount that was intended for distribution. 28 U.S.C. § 2255.[21]

---

[18]Respondent notes that in the Presentence Investigation Report, the Probation Officer reported that Petitioner "stated that from between November of 2000 until April 2001, when he was arrested on the present offense, he was using cocaine two to three times per month, usually a half-gram each time he used." (PSIR, ¶ 83.)

[19]Respondent also cites cases holding that a quantity similar to the asserted personal use quantity of cocaine (42.53 grams) has been held to be sufficient to allow an inference of intent to distribute. However, these cases discuss the inference in the context of sufficiency of the evidence for a conviction of possession with intent to distribute or conspiracy to distribute. They do not hold that any specific quantity of cocaine estops or precludes defendant/petitioner from claiming that any specific quantity of cocaine was intended for personal use.

[20]At that hearing, Petitioner will bear the burden of production. *Gill,* 348 F 3d at 155.

[21]Respondent also argued that the personal use argument has not been, to the respondent's brief author's knowledge, raised in this division, and thus, that counsel cannot be considered deficient for failing to raise an issue that is not commonly raised. (Dkt. 77 at 16, 11.) Effectiveness is not a locally driven standard; instead, reference is generally made to the American Bar Association standards of performance. *Strickland*, 466 U.S. at 688; *Williams v. Taylor*, 529 U.S. at 396; *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551, 562, 160 L. Ed. 2d 565 (2004).

**III.    REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


s/ *Charles E. Binder*

CHARLES E. BINDER

Dated: September 1, 2006                         United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Michael Hluchaniuk and Kenneth Sasse, and served in the traditional manner on Honorable David M. Lawson.


Dated:  September 1, 2006                    By       s/Mary E. Dobbick
                                                                 Secretary to Magistrate Judge Binder